23-12527 Weissman v. Cheokas Weissman v. Cheokas Weissman v. Cheokas Weissman v. Cheokas Weissman v. Cheokas Weissman v. Cheokas May it please the Court, my name is Donald Anderson. I represent Dr. Mark Weissman and Weatherly Aviation Company, appellants in this case. This is an appeal from the Middle District of Georgia, an order that specifically required Dr. Weissman and Weatherly Aircraft Company to execute a release of all of their claims in the case. Counselor, do we have jurisdiction, and if so, is it 1291 or 1292? Your Honor, we've argued in our brief that there's jurisdiction under both, and I'll explain why. We believe that there is jurisdiction, and I believe it's 1292 that provides for jurisdiction, excuse me, 1290, yes, 1292A1, that provides jurisdiction for a mandatory injunction by a date certain. And the Court required that this release be executed, I believe it was within 10 days, within a date certain. And that started the clock running. And so we think that that is a mandatory injunction that provides this Court with jurisdiction over the issue of whether that settlement agreement should be enforced, that specific issue. And so below all that's pending, I just want to be clear with the record, is the issue about attorney's fees? That issue is part of that same order, Judge, so I believe that it is part of the issue on appeal. And in addition to that, the order requiring a release of all of the plaintiff's claims effectively, functionally terminated the case, with the exception of a separate sanctions issue, which the district court was considering. Do we have separately, do we have jurisdiction over that? Yes. And the denial of the motion to amend? Because I guess I sort of view there being three issues before us, the settlement order, the sanctions order, and the denial of the motion to amend. Do we have jurisdiction over all that stuff? And I think that under 1292A1, as it relates to the mandatory injunction, this Court has jurisdiction over the first two, namely the mandatory injunction requiring that the release be executed. And in that same order, the sanctions associated with that same order, the enforcement of the settlement. The third bucket, if you will, Your Honor, which are the motions for leave to amend, those are not related to the enforcement. And so the only way this Court has jurisdiction over those is if, for some reason, or if for any reason, this is actually an appeal under 1292, excuse me, 1291 of a final judgment. If this is an appeal of a final judgment, if this order requiring the execution of a release functionally terminated the case, then unfortunately it's necessary to appeal all of the orders up to that point. And that's how we pick up the last two. And frankly, I think both apply. I think the mandatory injunction jurisdiction applies, and I think the fact that a release was required, it would have functionally terminated the case, which carries the other two. So we've argued all of those issues. I have a question about the substance. In your view, if the district court was not allowed to look at the e-mails, what could it base its decision on? Your Honor, that's precisely our argument. The dispositive issue in this case is whether the district court was entitled to review anything related to the mediation other than a written agreement made and executed by the parties, which was specifically called out for in the mediation. But the other side says that there is a written agreement, and that's the e-mails. I'm sorry, Judge, I didn't quite understand. The other side says that there is a written agreement executed by the parties, and that's the e-mails. And that is the argument that they've made, but those e-mails don't comply with the mediation agreement. The mediation agreement says that everything that happened in that mediation, whether it was an oral discussion between counsel, whether there were notes passed between counsel, whether we were e-mailing with each other, regardless of the form of the communication, no communications from that mediation were to be disclosed or used in any proceeding unless it was a written agreement made and executed by the parties. But how does the judge decide if it's a written agreement executed by the parties without seeing it? That's my question. And that's my point, too, Your Honor. There is none. That was my point to the district court, too. If there was a written agreement, a mediation can result either in a settlement or not a settlement. If there's a settlement, there's going to be, under this mediation agreement, there's going to be a written agreement made and executed by the parties. If there's not a settlement, there's not a written agreement made and executed by the parties. But, Judge, Grant's question remains. Why are the e-mails not the mediation agreement? I mean, it seems to me you have an offer. Please see the additions and subtractions in red below in acceptance. We agree to those changes in consideration of the release of the claims. Why is that not a mediation agreement? May it please the Court, those e-mails, the mediation agreement says that the document that can be disclosed has to be a signed document, signed by the parties, to get it right, written agreement made and executed by the parties as a result of the mediation. So I don't see signed. I see written agreement made and executed by the parties as a result of the mediation. Correct? Your Honor, the word executed means signed. Just so I'm clear, says who? Why is executed not, why is an electronic signature and an e-mail signature block not sufficient? I mean, that may be a stupid question, but it's not self-evident to me. Let me see if I can flesh that out. I mean, looking at, and I didn't cite it in my brief, but Black's Law Dictionary has a whole series of definitions for execution, and they include, of a contract, it means a signed contract. So execution, our position is the word execution means a document that is signed, and it has to be signed by all the parties. We do cite in our brief the Georgia Court of Appeals decision in Omnibuilders Risk, Inc. v. Bennett, which is at 313 Georgia Appeals, 356. And in that case, there was a mediation, but the party failed to sign the mediation, excuse me, failed to sign the agreement after the mediation. And the question was, could that, could the result of that mediation be enforced, even though the lawyer had signed it, but the party had not? And the Georgia Court of Appeals said the parties were present at the mediation, there was a signature line on the, there was a written agreement, there was a signature line for the party, and the party refused to sign it. The same reasoning applies here. It doesn't say, I mean, this is a very specific contract. The rights and obligations of the parties arising from this mediation are defined by the four corners of the contract, and the contract is, specifically lists the parties. The parties include Dr. Weissman, the parties include whether the lawyer So your position, Counselor, is that unless the parties were able to present the district court with a signed, completed document demonstrating that there was a settlement agreement, that absent that, there was nothing to be presented before the district court, and that in and of itself is evidence that there was no agreement? Your Honor, that is our position. Our position is that that But then when another party in this case says, well, we might not have gotten to the last step of the finish line, which is the signing, I think there's some validity to your argument that executed probably means signature included, then the district court is faced with the challenge of figuring out which party is correct. And when I look at the e-mails and I think of confidentiality, I don't see anything in the e-mails that talks about the merits of the claims, that is an admission of liability, that talks about how the amount was negotiated or anything underlying. All the e-mails show is what would appear in a settlement agreement. Your Honor, if I may, that last part, crossing the finish line, and my time is running out, so I'll try to be very quick about this. In mediations over many, many years with many good mediators, unfortunately, at the end of a long day, the mediator sits down with the parties and says, we're going to write this out on my legal tablet and you're going to sign it before we leave here. That finish line in mediation provides confidentiality, it provides certainty, and it provides finality. The signed agreement at the end of a mediation is a very critical part of the mediation process, and that's why it's in this mediation agreement and that's why it's specified in the mediation agreement. To your point, to go back and say, let's look at these e-mails and let's see what's behind this, there's a lot behind those e-mails. I'm not privileged to disclose that. I didn't disclose it to the district court. I don't feel like I'm privileged to disclose it to this court. There's a lot that goes into what the meaning of those terms are. Facially, they may look like they make all the sense. The district court is often exposed to confidential information. Parties file things under seal all the time. So I guess I'm just wondering, given the alternatives that the district court offered, why were those not sufficient to make sure that the district court at least was informed enough to make a decision but still kept the terms and any underlying thoughts confidential from the public? Your Honor, with all due respect to the district court, in the mediation, part of the mediation process is not disclosing to the finder of fact or to the entity that's going to be deciding the legal issues. The mediation is intended to be purely confidential, strictly confidential, and it really does not involve disclosing things. They're under seal in this case because the appellee filed them, and we did everything we could to prevent them from being filed. We filed a petition for mandamus. We sought them to be excluded from the court record, and we've done everything we can to prevent them from being included in the record. As a last resort, now they're just under seal. That's all we do, and we don't have any further control over it, Your Honor. I have one more question. Some statutes in Georgia require a wet signature, correct? I'm not familiar with a statute that requires a wet signature, Your Honor. I think in certain real estate contexts, I think I recall that, but there's no such requirement in the mediation statute, is there? The mediation statute requires a signature, and it does. If we go through the provisions of the Uniform Mediation Act, they talk about a signature. If we look at the mediation agreement, and, again, this was not a court-ordered, court-directed, court-referred mediation. This was a purely private contract between these two parties to try to resolve this dispute in the course of a mediation, and so the only thing that governs the results of this mediation are that mediation agreement, which goes back to the question of whether it's a written agreement made and executed by the parties as a result of the mediation. But do you have any statutory requirements that you can share with us for what constitutes execution, or you're just saying this wasn't it? Execution, at the very least, Your Honor, I believe requires a signature and requires a delivery. We can go to Black's Law Dictionary on that. I don't have a statute. I'm less interested in Black's Law Dictionary than I am in the Georgia Code. Is there anything in the Georgia Code that says what constitutes execution in these circumstances? Your Honor, I don't think that term has been interpreted. The Georgia Code doesn't use the term execution. The mediation agreement does. The Georgia Code requires a signature. That's the best I can do, Jen. And which code section are you saying requires a signature? Let's see here. I believe it's 917.5a.1, which says there shall be no privilege under the Code Section 917.3 for a mediation communication that is in an agreement evidenced by a record signed by all parties to the agreement. Now, there may be other, if I look more carefully, and I'll do it and see if I can come up with something when I come up with my reply. Thank you. And the last thing, and I know I'm over my time, but if I could. Why don't you just, you can wait for rebuttal. You've got some rebuttal time coming. Okay, I'll stand by. Thank you, Your Honor. Very well. All right, Mr. Banter, let's hear from you.  May it please the Court. My name is James Banter, and John Kennedy and I had the privilege of representing the appellee and defendant below, Michael Chokas. And this case is of the utmost importance as a ruling on this case will impact settlements, mediation, and a court's authority to review evidence to answer a threshold question, was the settlement reached? We respectfully petition the Court that the trial court correctly found the settlement was reached and should be enforced in a well-reasoned decision, and that decision should be affirmed, which in affirming that decision would end seven years of litigation, which is exactly what the parties intended to do at a mediation back in 2023. Can I ask you just a preliminary question? We started with your adversary about jurisdiction. Let me just go there with you as well. So it sounds like we've probably got jurisdiction over the settlement order itself. Beyond that, though, is it necessarily the case that we have jurisdiction over the sanctions order and the amendment order? Yes, Your Honor, and we addressed this in our jurisdictional statement, and it is awkward, but we believe that the Court's final, is a final order, again, with injunction under 1292 and also then the final order in 1291, that that would give the Court the jurisdiction to address all the issues that are before the Court today. Well, I mean, I guess I have to, I think 1291 is kind of a heavy lift for you, because, I mean, didn't the district court's order leave some stuff to be done, get the releases, you know, sort of come back to me, get the approval, then I'll issue the order? I mean, there was more to be done, right? Yes, but, again, with that, I think the parties tend to agree here that it was, in essence, in effect, a final order with that, though. Yeah, no, I mean, but the parties can't confer upon us jurisdiction that we don't have. So your agreement, while relevant, is not decisive, I guess.  So, I mean, do you, I guess, let's assume that I, speaking only for myself, am skeptical that 1291 is going to get you there. If we're talking about 1292A1, I think I agree that we have jurisdiction over the settlement order, and now I'm wondering whether 1292A1 provides us jurisdiction over the other orders in the case. Yes, Your Honor, and, of course, if the court does not have jurisdiction, it would not have the ability to issue or ponder on those issues, but it's just the difficult procedural posture we're in with this case, beginning the orders, but also the settlement itself excluding fees sanctions and also the order enforcing the settlement had other fees sanctions are still outstanding, but may or may not confer jurisdiction, but it's a tough issue. We did address that in our jurisdictional statement. Okay, very well. The court asked the first question about does the trial court have the authority to rule, to review evidence to answer that threshold question, and, Judge, I believe you asked the question, well, who says? Well, the trial court says, and what appellant's counsel wants to create a situation or circumstance where it's not a trial court, it's actually one party says. They want to create a situation where one party can back out of a settlement agreement by raising their hand and say, Judge, I am telling you there's not agreement, that therefore should end the situation. Well, I guess in fairness to his position, I mean, I've got to confess, I kind of thought I had him on the ropes, but made and executed, it's not obviously wrong that execution requires a signature, right? And he is right about the Mediation Act, right? It does refer to signature. It does, but that can be done by e-mails, and Georgia law has addressed this specifically, and this was in our briefs to trial court, that e-mails in a settlement context can bind parties through that, through electronic signatures. And is that e-mails from counsel, right? Like, can counsel execute the agreement on behalf of the parties, or does an execution have to be by the parties themselves? Attorneys have apparent authority to bind their clients to agreements, specifically not only in contracts, but specifically in a settlement context. And so here, a counsel has apparent authority to do that, unless it is expressly stated that such scope of representation has been limited. And the evidence is clear there has been no limitation of that scope. So with that, if there has been no limitation, an opposing party here, the appellee, may deal with that attorney as if it is the client. So when the e-mail is going back and forth that the court has referenced, it first started by saying, this is to memorialize a settlement agreement. And with the last e-mail, again, coming from the appellant's counsel saying, quote, we agree to these changes. The we being not only the client, but the counsel there saying we agree. That is the objective evidence that a court has to review to decide that, yes, a settlement was reached and it was done by the attorney on behalf of his client. So you think that e-mail constitutes, or that series of e-mails constitutes, the executed agreement? Yes, Your Honor, I do. And again, when a court is reviewing the evidence, they apply what is called a similar standard to a motion for summary judgment, and they look at what would an objective, reasonable person believe. They look at the written evidence, which is a series of e-mails, but they can also review the testimony and other affidavits about this very narrow issue as a settlement reached. So, yes, you have the e-mails, which constitutes the written agreement between the parties. We also have the undisputed evidence that was presented to the trial court of the next e-mail, which was the next day, the appellant's counsel sent to the trial court saying, we have reached a settlement and divulging two out of the four terms. So now you have the written agreement, you have the e-mail the next day, and then at the evidentiary hearing, you had the mediator himself who came in and testified under oath that, yes, it was his opinion, he was there, that there was a written agreement between the parties. But where was it? I mean, you've cobbled together a bunch of e-mails, and that could be challenged in terms of a meeting of the minds, especially because, again, you've got so much discussion back and forth, and clearly whether there was a meeting of the minds at that time, there isn't one right now. But there was no document with a signature at the end to memorialize in one place what all the terms would be. That does seem a bit problematic. Respectfully, Your Honor, I would disagree that we do have a document. It is the e-mails, and it is the series of e-mails that can be read together as one, as the parties and the appellants are saying that we agree to these changes, that the changes that were not done, and they're not changes, respectfully, we would contend they were to correctly memorialize the four terms, but it is those e-mails that, yes, is the one document. And when the trial court had the evidentiary hearing and was deciding the issue, again, as a trial court should, not what appellants want to contend that they can, it was not the weight of the evidence or the credibility of the evidence. It was all the evidence saying the settlement was reached from the multiple aspects written while testimony versus zero evidence that there was not a contract. And that is, again, for applying the motion for summary judgment. There is no evidence. Well, there was no zero evidence on the other side because they maintained anything they produced was confidential. That's correct. And I would say that position is not found to be consistent with the law. If we look at what evidence can be presented, we first look to Georgia law. And the Georgia Uniform Mediation Act found in 917.5 and 6 specifically carves out the privilege of a written agreement. And then if you go to 917.6, it specifically carves out the mediator may testify about three things, was a mediation held, who attended, and was the settlement reached. That is exactly what our mediator, Mr. Dealer, testified at the hearing. And to the third part of it was a settlement reached, unpack that a little bit. Because, again, their side is saying that, you know, everything in the email arguably is confidential, which speaks to whether or not a settlement was reached, as opposed to a document that says here it is, consistent, no interruptions with dates and responses and replies. Yes, Your Honor. Your Honor, I think I would first point the Court's attention to the four terms of the agreement. The terms themselves do not list that those provisions are confidential. So if you look to the agreement between the parties, that in and of itself is not confidential. Then we get to Georgia law, the Georgia Uniform Mediation Act, as well as the mediation agreement that carved out an exception of the written agreement between the parties. So that in and of itself is not confidential and was allowed to reach that third prong, which was a settlement. And, again, the mediator there, what would an objective, reasonable person think? We had the best evidence of a mediator who was there after the ten hours of mediation who says I was there with the parties. I believe that they were in a settlement based not only on their written representations, but also the actions of the party. Can I ask you to circle back to something you said earlier? Maybe I'm too hung up on this whole now signature execution thing. But you said Georgia cases have held that in the settlement context, these sorts of things can be accomplished by e-mail. I just don't know the cases, but those cases, are they purporting to define what execution is or what signature is? Or on what basis are those cases saying that e-mails are good enough? I think both. And, again, the cases were cited in the trial court, which is part of the record before the court. So they're addressing that e-mails, electronic e-mails can be a written document, but also that they suffice because you have someone with the authority signing those e-mails. The trial court's order went through the fact that the e-mails from the mediation night had signatures. It had the first names of both myself and the appellant's counsel saying, here's what we're saying regards James or best James. The court was relying on that these are written, first part, but also signature executed by someone with authority to do so. Okay. Thank you. And I think one of the issues that I think the judge, you were just raising about where is the meeting in the minds or where is the potential issue for no meeting in the minds, the appellant's counsel, again, without putting up any authority or evidence, simply points to a clarification call that happened the day after the mediation. And with that, we would submit that that call was not to offer a settlement or a counteroffer or to modify the terms. It was specifically to clarify and affirm that all parties do have a meeting in the minds. In the line of cases, again, applying Georgia law, where a call later happened, it was where a counteroffer was made or a party was seeking to modify terms, add a new release. Again, the undisputed evidence is on that clarification call that was not done. Number one, there's no evidence that we on that call specifically asked that a new party be released or a new term be added. It was just to confirm that we all agree, in which the undisputed evidence from there shows we all agree. The mediator testified that he was perplexed to try to understand where the party disagreed because the parties were all saying the same thing. And specifically on number two, if you look at what that call happened, there is no evidence in the record that when that call first happened and we were talking to appellant's counsel and we said, what do you mean by this regarding the settlement? In the record, it's never that the appellant's counsel said timeout, what settlement are you talking about? That's clear evidence that even he thought there was a settlement reached that denied the mediation. Well, are we supposed to here decide whether there was a settlement agreement? I thought it was just whether or not the appellants were within their right to challenge the submission of any evidence related to a settlement agreement based on confidentiality. I didn't understand this to then be also deciding whether or not the district court got the settlement question right. I believe they go hand in hand, Your Honor. And I think what Judge Newsom said at the beginning, that was one of the issues, is a settlement agreement. And yes, it's first to say does a trial court have the authority to review the evidence, but then when reviewing that, did the trial court get it right? And the answer to both of those is yes, the trial court can, and yes, the trial court got it right. And appellant's counsel is seeking this court and respectfully petition this court to remand it back to the trial court to now have an opportunity, if the court so allows them, to put up evidence. And we respectfully petition the court to not do that. First, the record is clear that appellants had numerous opportunities and court-ordered opportunities to put evidence, but intentionally defied a trial court, a federal judge, in not doing so. When the competing motions to enforce confidentiality were filed, the trial court ordered both parties to respond, and appellants' counsel said they would not do so. At the hearing, we had opportunity to present evidence and legal arguments, and again, appellants' counsel chose not to do so. They chose not to cross-examine live witnesses that were there. And third, even after the hearing, appellants' counsel once again, based on the trial court's order, said, Judge, we are unwilling and unable to respond and put up evidence. This is a series of multiple times of appellants' counsel defying a federal court judge's orders and opportunities. They should not get a second bite out of the apple now to do so, because to do so would be highly prejudicial and appley. Again, we comply with the trial court's orders. We had live testimony and evidence there to present, and did so while appellants seeking on a basis of confidentiality that's, again, it's not based on law. In fact, got to sit down and watch our presentation and watch all our evidence. They should not be allowed to remand and have an opportunity to now put on evidence when they may not have a good basis to do so at the beginning. Was there ever a hearing, a 1927 hearing, on the sanctions? We contend there was, Your Honor. Again, 1927 and also the hearing authority of a court to issue sanctions and attorney's fees is based on does the person who's getting fees assess against them having a fair opportunity and fair notice, due process, to know that it's coming. We submit that that notice can be provided not only through the court but also through a party, and that notice was sufficiently given multiple times. The record shows that in written communications through emails, we submitted and pleaded with appellants' counsel, please stop going down this road or we will have to seek a motion to enforce, but also seek sanctions. But an email is not a hearing, is it? It's not a hearing, but in the young, this court said that it doesn't require a hearing. It just requires notice that if you do not pivot away from your actions, that sanctions could be provided against you. And that's just, I see my time is up. May I finish the question? Yeah, please finish and then I've got one more. Yes, Your Honor. So, again, the emails and the oral communications by appellate's counsel provided that notice, but also we would contend that the trial court provided that notice by giving them multiple times through court orders of are you going to put up arguments and provide evidence, not only at the hearing, before the hearing, and after the hearing. But the Amlong case doesn't say notice. The Amlong case says an attorney threatened with sanctions under Section 1927 is entitled to a hearing. And I would believe, however, that holding is from that case, but it deals more, if you go back to the young and other cases cited by this court, is the hearing was to provide due process and fair notice and warning. And, again, because the cases say that a party can provide the fair notice and due process, a party itself can't have a hearing. So I would read that that was applied to that case. But, again, ultimately you have to decide if someone put on warning and fair notice that if they don't stop their actions, they would be sanctioned. What if, and I'm not suggesting that we do, and I can only speak for myself in any event, but if we think that the requirements for Section 1927 were not met, did the court still have inherent authority to issue sanctions in this context? Yes, Your Honor, they do. The court does have the inherent authority to do that and ultimately to make a basis found on bad faith to issue the attorney's fees. And that is what the court did. The trial court went through the analysis. Again, it wasn't the bad faith that someone was opposing the motion to enforce. The court specifically addressed that it was the way that such opposition was done or not done based on law and fact. And, again, that gets back to the court's warnings before of please put up evidence, please put up arguments. I'm giving you more time to do so before I close testimony. And throughout those numerous times and warnings, again, appellant's counsel chose not to do so based on an argument that was not consistent and obviously not consistent with law and fact. All right, let me just ask you one more also about the sanctions issue. But about jurisdiction, I know your theory is that 1291 covers everything, including the sanctions. But if I disagree and if I'm looking for a hook in 1292A1, would the theory be that because 1292A1 extends to any order that grants an injunction, because the sanctions issue was adjudicated in the same order that granted an injunction, it just sort of travels along with the appellate jurisdiction over the injunction? I believe that would be correct, Your Honor. And does that mean, I guess, and I realize that I do not mean this to be a quiz show. I'm just looking for help. Would that mean that any time a district court issues an order that includes an injunction, it can then like lard it up with all this other stuff and that stuff all goes upstairs with the injunction? I don't think it means every time. But I think, again, to the uniqueness and maybe awkwardness of this case, that it should be applied for this case. I don't mean every time. All right, very well. I'm sorry, I have one more question. Now that we're back on jurisdiction, let's say the district court had said, I don't think I have jurisdiction. What happens, what would have happened then in this case? Where would you have been? And respectfully, Your Honor, jurisdiction on what issue? On any issue. On any issue? Yeah. Or let's say that we don't have jurisdiction. Then what happens next for you guys? The trial court's orders would be affirmed and we would then, the case has currently stayed, which allowed the appellants the opportunity to file a response to our fee petition on the enforcement of the sanctions. But if the court does have jurisdiction, the trial court's orders would be affirmed. So the trial court's orders would be affirmed, and then the court would enforce, and then after enforcement, Mr. Weissman could then challenge everything here and we'd be back here? Or would some things be no longer subject to challenge? I think if it happens in that order, there is possibilities that the appellants could then come back to the court if it's given in that order, I believe, Your Honor. And would there be any possibility of new issues that could arise at that time that are not before us now, or would it be just all the same thing however many months or, God forbid, years later? I believe there could be a new issue at that point because, again, the only remaining issue are the fee sanctions. The new one from the motion to enforce it could be that new issue, Your Honor. But related to attorney's fees, not to other aspects of the case. Correct. And attorney's fees on the court agreeing with us that the motion to enforce should have been granted, and then that behavior was done in bad faith. Got it. Thank you. Okay, very well. Thank you very much. We took you well beyond your allotted time. Mr. Anderson, you've got five minutes of rebuttal time remaining. May it please the Court. I want to answer Judge Grant's question that I hadn't quite finished or wanted to be sure I answered correctly from the beginning of our argument. And I think that the provision for requiring a signature in this Uniform Mediation Act is in 917.5a.1, which said there should be no privilege under Code Section 973 for a mediation communication that isn't in an agreement evidenced by a record signed by all parties to the agreement. I think that's the exception in the Uniform Mediation Act. And I assume you're probably aware of them in a way that I'm not, but how do his cases that he says where Georgia courts have said, hey, in the new era, email can count for in-settlement negotiations, how do those map on, a, to what sort of the ordinary meaning of execution is or isn't, and, b, what the Mediation Act may say about signatures? Your Honor, and I'm going to give the name of the case from memory, but I think it's the Johnson case. Johnson v. DeKalb County, I believe, is the name of the case. And there's a whole string of different cases that follow on with Johnson v. DeKalb County. And those are cases where lawyers are negotiating back and forth with emails. And the Georgia Court of Appeals has said that a series of email communications can give rise to an enforceable settlement agreement. Those are not cases in the mediation context. They're not cases, to my knowledge, that have anything to do with the word signature. They rely solely on the apparent authority of lawyers, as they always have, to negotiate orally and writing and emails to see if they can reach a settlement agreement. And the distinction I would make here is that these parties chose mediation. They didn't choose to write letters back and forth to each other, to email each other, to go to lunch and talk about it. Because of the context of this case, there was only one forum in which these parties were comfortable trying to reach an alternative resolution. That was mediation. And mediation is a very carefully structured process. And it's intended, the hallmarks of mediation are confidentiality, certainty, and finality. So my question, Counselor, has to do with, which I do appreciate your friend on the other side kind of separating, we've got your argument of confidentiality. So you didn't present any evidence countering that a settlement agreement didn't exist. Your whole position was it didn't exist because you can't produce a document, one document with everyone's signature. But let's say that that was not a proper position for your client to take, and therefore we agree with the district court that you should have done something or produced something. So now we've got the actual settlement agreement, which I guess is the alternative. You are directing us to the emails because that's all there is or that's all you've got. No, Your Honor. In fact, I couldn't disagree more emphatically. Okay. That's not all I've got. There is no settlement agreement. There was no meeting of the minds. If we were to go behind these emails, and as Eppley would have us do, and Eppley has chosen these emails, they've characterized the conversation that took place the next day. There's no affidavit from me as to what happened in that conversation. There's no affidavit from my client as to what the understanding of those terms were that were in those emails. All of that would have to be unpacked. And in order to unpack that, it would be necessary not just to look at these emails to determine if there was a settlement agreement. You'd have to look at parole evidence. You'd have to look at their understanding of what the terms were. So the answer is you lose on the confidentiality argument, but we remand for the district court to hold some kind of limited evidentiary hearing or to reopen discovery for a certain period of time. What's the solution? Judge, it's a conundrum because if this court were to rule that now the record was open to find out what happened in that mediation, at the very least I would want to cross-examine the affiant, Mr. Kennedy, as to his understanding of the terms. I'd want to cross-examine the mediator because he testified improperly at the hearing. He's not supposed to testify, but he came and testified anyway. I'd want to present my own affidavit. I'd want to present my client's affidavit. But didn't you already have a chance to do all that and you declined? Your Honor, that's absolutely correct. And the reason I declined is because if I were to do that, I would be waiving a right that I believe, reasonably believe, is provided both under the mediation agreement and also under the Uniform Mediation Act. 917-3 specifically says that a party may decline to disclose information that occurs in a mediation. I would be waiving that statutory right. If I stood up there and said, Judge, let's just talk about all this stuff and let's just lay it all out. I know you've invited me to do it. I'd like to do it. And maybe that would be one way to get this all worked out. Preserving that objection but moving forward with the proceedings, would that not get you anything here on appeal at some point, though? Your Honor, in fact, when the mediator testified, I rose to cross-examine the mediator. And I had a continuing objection to Mr. Kennedy's testimony and his affidavit and to all the evidence that they had presented. The mediator rose and I said, Your Honor, I've got questions for Mr. Dealer. And it's in the briefs. The judge's response was, Mr. Anderson, you can't have it both ways. If you ask questions of Mr. Dealer, you're going to waive it. And that was the dilemma. That's the conundrum. And, frankly, in all seriousness, that's the problem with this case. Mediations aren't intended to engender new litigation over what happened in mediation. A mediation is a straightforward process. Either it results in a settlement agreement, which is documented in the proper way, or the parties go to trial. That's what happens. It's not intended to engender another year and a half of litigation. Okay, very well. I think we have your case. It is 1025. We are going to take a five-minute break. We'll be back at 1030 sharp. Court is in recess. Thank you. Thank you. Thank you.